UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

LAWRENCE CROSS,

                                Plaintiff,

   -against-                                           6:16-CV-00418 (LEK/TWD)

CITY OF ALBANY, NEW YORK, *et al.*,

                                Defendants.

## MEMORANDUM-DECISION AND ORDER

### I.    INTRODUCTION

Pro se Plaintiff Lawrence Cross commenced this action against Defendants City of Albany, New York, Officer Michael Romano, and City of Albany Corporation Counsel John Reilly pursuant to 42 U.S.C. § 1983 and New York state law. Dkt. No. 1 ("Complaint") ¶¶ 1–2. Presently before the Court is Defendants' Motion to Dismiss. Dkt. Nos. 8 ("Motion"), 8-1 ("Memorandum"). Cross responded to Defendants' Motion, Dkt. No. 10 ("Response"), and Defendants filed a reply, Dkt. No. 11 ("Reply"). For the following reasons, Defendants' Motion is granted in part and denied in part.

### II.    BACKGROUND

Around 10:00 AM on March 3, 2014, Lawrence Cross, a taxi driver for twenty-eight years, was driving his taxicab in Albany, New York. Compl. ¶ 10. He had two passengers with him. Id. ¶ 88. Cross had picked the passengers up in Rensselaer and driven them to the Albany Medical Center, from which he was to drive them back to Rensselaer. Id. ¶ 11. As Cross was beginning the last leg of this round trip, Officer Mihael Romano pulled him over "near the Central Avenue and Lexington intersection" in Albany. Id. ¶ 10. Romano had apparently noticed

that the taxicab did not display a taxicab medallion, which is generally required for the operation of taxicabs in Albany. Id. ¶¶ 11, 85. Romano also learned that Cross did not have a hack license, another requirement typically imposed on taxi drivers operating in Albany. Id. ¶ 11. Cross told Romano that he had picked up the passengers at Albany Medical Center, id. ¶ 85, but that these passengers were on the last leg of a round trip that began in Rensselaer, id. ¶ 10. Cross explained that he was not required to have a medallion or hack license in this situation, since he had not picked up a new fare in Albany. Id. At some point, Romano noticed that one of the passengers was carrying cash in his or her hand. Id. ¶ 87. Romano then asked for Cross's driver's license and vehicle registration, and after receiving these items he returned to his car. Id. ¶ 10. When Romano came back to the taxicab, he issued two summonses to Cross: one for violation of Albany City Code section 353-20, which provides that "[a] taxicab not assigned a medallion by the city of Albany may terminate a trip within the limits of . . . Albany if such trip commenced outside the limits of [Albany]. Such taxicabs shall not acquire a new fare within the limits of the city of Albany"; and another for violation of Albany City Code section 353-37, which requires medallioned taxi drivers to have a hack license. Compl. ¶ 11. Although not mentioned by either party, Albany City Code section 353-14 defines "hack license" as "[a] permit granted by the Commissioner to any person to drive a medallioned taxicab within the limits of the City of Albany."

At some point during the stop, Cross had offered to show Romano his log book, which according to Cross would have established that he did not pick up a new fare in Albany because he was in the middle of a round trip begun in Rensselaer. Compl. ¶¶ 77–79. Romano, however, refused to see the log book, later explaining that he not was required to examine it. Id. ¶ 83.

Albany City Code section 353-20 provides that "[t]axicabs not assigned a medallion in the City of Albany shall keep a log of all trips made into the City and back outside the City limits," and that the "logs shall be made immediately available for inspection by any police officer upon request."

On March 13, 2014, Cross attended his arraignment at Albany City Court, where he pleaded "not guilty" to the two violations for which he had been issued summonses. Compl. ¶ 13. Trial was scheduled for 1:00 PM on July 11, 2014. At 10:00 AM on the day of trial, Yankee Doodle Taxi, Cross's employer, received a call from the office of Albany Corporation Counsel, which was offering to "drop all charges [against Cross] in the interest of justice." Id. ¶ 14. At 12:14 PM, a "caller claiming to be officer Michael Romano" called and left a message explaining that there was "no need to appear in the Trial Court at 1:00 PM." Id. Cross turned down the offer, preferring to "stand[] trial on the merits[,] exacting an acquittal." Id. A week after the trial was held, Judge Thomas K. Keefe of the Albany City Court issued his decision, dismissing both of the tickets. Id. ¶ 17. Albany Corporation Counsel appealed the decision, and the dismissal was affirmed on April 15, 2015. Id. ¶ 18. The appellate judge refused to disturb the "finding that the fare in question was one continuous trip and that therefore . . . respondent did not violate the ordinance prohibiting non-medallioned taxicabs from picking up new fares within city limits." Id. ¶ 21–22.

On April 13, 2016, Cross initiated this lawsuit against Defendants. Id. ¶ 1. Cross asserts a § 1983 claim against Romano for false arrest, id. ¶¶ 74–98, a state law claim of malicious prosecution against Romano and Reilly, id. ¶¶ 99–107, and a § 1983 municipal liability claim against the City of Albany, id. ¶¶ 108–117. Defendants responded by moving to dismiss the

3

Complaint in its entirety, arguing that a traffic ticket does not qualify as a Fourth Amendment seizure for the purposes of establishing a false arrest or malicious prosecution claim under § 1983, Mem. at 3–5, that Cross has failed to allege facts sufficient to establish municipal liability against the City of Albany under § 1983, id. at 5–6, and that Reilly is entitled to prosecutorial immunity, id. at 6–7.

### III. LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A court must accept as true the factual allegations contained in a complaint and draw all inferences in favor of the plaintiff. Allaire Corp. v. Okumus, 433 F.3d 248, 249–50 (2d Cir. 2006). Plausibility, however, requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence of [the alleged misconduct]." Twombly, 550 U.S. at 556. The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556). "[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." Id. (quoting Twombly, 550 U.S. at 555). Where a court is unable to infer more than the mere possibility of the alleged misconduct based on the pleaded facts, the pleader has not demonstrated that she is entitled to relief and the action is subject to dismissal. Id. at 678–79.

## IV. DISCUSSION

### A. The False Arrest Claim

False arrest claims based on § 1983 rest on the "Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest without probable cause." Weyant v. Okst, 101 F.3d 845, 852 (2d Cir. 1996). These claims are "substantially the same as . . . claim[s] for false arrest under New York law." Id.; see also Davis v. Rodriguez, 364 F.3d 424, 433 (2d Cir. 2004) ("In analyzing § 1983 claims for unconstitutional false arrest, we have generally looked to the law of the state in which the arrest occurred."). Under New York law, there are four elements to a false arrest claim: (1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged. Savino v. City of New York, 331 F.3d 63, 75 (2d Cir. 2003) (citing Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994)). The existence of probable cause to arrest constitutes a complete defense to an action for false arrest, establishing that the confinement represented by the arrest was privileged. Bernard, 25 F.3d at 102. Probable cause exists where the officer has "knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Martinez v. Simonetti, 202 F.3d 625, 634 (2d Cir. 2000).

"Section 1983 claims of deprivations of liberty related to criminal prosecutions implicate the Fourth Amendment right to be free of unreasonable seizure of the person." Burg v. Gosselin, 591 F.3d 95, 97 (2d Cir. 2010). Thus, a plaintiff bringing a false arrest claim based on § 1983 must establish a deprivation of liberty that qualifies as a "seizure" under the Fourth Amendment. Id. Under § 1983, "the issuance of a pre-arraignment, non-felony summons requiring a later court

appearance, without further restrictions, does not constitute a Fourth Amendment seizure [for purposes of establishing a false arrest claim]." Id. at 98. On the other hand, "[t]emporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' [under the Fourth Amendment]." Whren v. United States, 517 U.S. 806, 809–10 (1996). Automobile "stops must be justified by probable cause or a reasonable suspicion, based on specific and articulable facts, of unlawful conduct." United States v. Scopo, 19 F.3d 777, 781 (2d Cir. 1994).

Defendants argue that Cross's false arrest claim against Romano should be dismissed because Cross has merely alleged that he was issued a "non-felony traffic ticket requiring a court appearance," which is insufficient to show a seizure under the Fourth Amendment, Mem. at 4, and because Cross has failed to allege facts suggesting a lack of probable cause for the issuance of the summons or the traffic stop, id. at 5.

Defendants appear to conflate two separate aspects of Cross's false arrest claim. Cross states that the "gravamen" of the Complaint is the "event of the stop," and in particular Romano's "grotesquely incompetent, negligent and outrageous incapacity to recognize and determine facts and evidence available to him constituting the totality of lawful or unlawful circumstance." Compl. ¶ 76. Cross is proceeding pro se, so the Court must construe his pleadings liberally. Boykin v. KeyCorp, 521 F.3d 202, 213–14 (2d Cir. 2008). Construed liberally, the Complaint alleges facts that call into question the legality of the initiation of the stop. Cross also challenges the continuation of the stop and the issuance of the two summonses. The Court will address these two events in turn.

*1. The Initial Stop of Cross's Taxicab*

Cross alleges that Romano stopped the taxicab near an intersection in Albany. It is well established that this type of temporary detention, however brief and limited, qualifies as a seizure under the Fourth Amendment. Whren, 517 U.S. at 809–10. A reasonable person in Cross's position would not feel "free to leave" the scene after being pulled over by Romano. United States v. Mendenhall, 446 U.S. 544, 554 (1980).

The question, then, is whether Romano had either probable cause or reasonable suspicion to believe that Cross had committed "a traffic offense—however minor." Scopo, 19 F.3d at 782. As Defendants point out, Cross admits that his taxicab did not display a medallion. Reply at 1. Taxicabs operating in Albany are typically required to display medallions, but under Albany City Code section 353-20(A), a taxicab that does not have a medallion may end a trip in Albany if it was commenced outside of the city. An officer cannot infer a violation of the taxicab regulations simply because she sees a taxicab carrying a passenger in Albany without a medallion. Such a taxicab may be ending a trip begun outside of Albany. If the officer witnesses the taxicab pick up a passenger in Albany, that may be grounds for reasonable suspicion of a violation of the taxicab regulations, because new fares may not be acquired within city limits. Id. But, drawing all factual inferences in favor of Cross, that is not what Romano saw here. Nowhere does Cross allege that Romano actually witnessed the passengers enter the taxicab; instead, Cross states merely that he was stopped by Romano near an intersection in Albany, Compl. ¶ 10, and that Romano noticed that there were passengers in the taxicab, id. ¶¶ 10–12. These are the only specific and articulable facts observed by Romano, and they are fully consistent with the lawful operation of a taxicab in Albany. The Court therefore finds that, according to the Complaint, Romano had no "more than

an 'inchoate and unparticularized suspicion or "hunch"' of criminal activity." Illinois v. Wardlow, 528 U.S. 119, 123–24 (2000) (quoting Terry v. Ohio, 392 U.S. 1, 27 (1968)). To find otherwise would be to subject taxicab drivers who are lawfully operating non-medallioned taxicabs in Albany to the risk of being stopped and detained for no legitimate reason.

Taking Cross's factual allegations as true, Romano lacked reasonable suspicion to make the stop. Further, the stop itself constituted a seizure for purposes of the Fourth Amendment. Since Defendants moved to dismiss the false arrest claim on the grounds that probable cause existed and there was no seizure under the Fourth Amendment, the Court will not dismiss Cross's false arrest claim against Romano to the extent that it challenges the initiation of the stop.

*2. The Continuation of the Stop and the Issuance of the Summonses*

Defendants argue for dismissal of the false arrest claim on the grounds that the issuance of a pre-arraignment, non-felony summons that requires only a later court appearance does not give rise to a seizure under the Fourth Amendment. Mem. at 3. Defendants also suggest that there was probable cause for the issuance of the two traffic tickets because it was "visibly apparent" that Cross's taxicab lacked a medallion. Reply at 1. The Court agrees that Cross's false arrest claim relating to the continuation of the stop and the issuance of the summonses must be dismissed.

"Courts . . . have repeatedly held that the issuance of a traffic ticket or court summons alone does not constitute a seizure under the Fourth Amendment for the purposes of establishing a false arrest . . . claim." LoSardo v. Ribaudo, No. 14-CV-6710, 2015 WL 502077, at *5 (E.D.N.Y. Feb. 5, 2015). The Second Circuit established this rule in Burg, 591 F.3d at 98,

8

holding that a summons that requires only one court appearance and that places no further restrictions on travel does not give rise to a seizure under the Fourth Amendment. Cross alleges that after "returning from his Police Cruiser[,] Romano served Cross with simplified traffic violation tickets citing violations of local city laws." Compl. ¶ 11. Cross further alleges that he attended an arraignment for the two tickets, and that at the arraignment he pleaded not guilty to the traffic violations. Id. ¶ 13. There is no mention in the Complaint of any other proceedings that Cross was compelled to attend merely as a result of the issuance of the summonses. Accordingly, the facts set out by Cross fall squarely within the rule established by Burg, and therefore Cross fails to allege a Fourth Amendment seizure in connection with the issuance of the summonses. Since false arrest claims based on § 1983 cannot succeed absent a showing of a Fourth Amendment seizure, Burg, 591 F.3d at 97, Cross's false arrest claim as it relates to the issuance of the summonses must be dismissed.

Cross's false arrest claim relating to the remainder of the stop also fails because Romano had probable cause to order Cross to stay in his taxicab while Romano returned to his car to write out and issue the tickets. According to the Complaint, after he pulled over the taxicab, Romano noticed two passengers in the back and asked Cross where the fare came from. Compl. ¶ 85. Cross responded that he had picked the passengers up from Albany Medical Center, which is located in Albany. Id. Cross also explained that the fare was a round trip begun in Rensselaer, and offered to show Romano his log book, which would purportedly corroborate this assertion. Id. ¶¶ 77, 88. At this point in the stop, it was reasonable for Romano to infer that Cross had violated Albany City Code sections 353-20 and -37, because Cross admitted that he had picked up passengers with his non-medallioned taxicab in Albany. Although Cross tried to tell Romano

9

that he was in the middle of a round trip, Romano was not required to believe Cross's version of events. See Krause v. Bennett, 887 F.2d 362, 372 (2d Cir. 1989) ("It would be unreasonable and impractical to require that every innocent explanation for activity that suggests criminal behavior be proved wrong, or even contradicted, before an arrest warrant could be issued with impunity.") (citing Criss v. Kent, 867 F.2d 259, 263 (6th Cir. 1988)). Cross's admission that he had picked up the passengers in Albany without a medallion could lead a reasonable officer to refuse to believe Cross's story about the round trip, and to instead think that Cross had picked up a new fare in Albany in violation of the taxicab regulations. Thus, the existence of probable cause to issue the summonses is a complete defense to Cross's false arrest claim as it relates to Romano's decision to order Cross to stay in his taxicab while he wrote out and issued the two tickets. Bernard, 25 F.3d at 102.

Since Cross's false arrest claim survives Defendants' Motion only to the extent that it challenges the initial stop, Cross can "recover only the nominal damages arising from the minor invasion of privacy occasioned by the stop of his car. [The] subsequent [issuance of the summonses] was clearly supported by probable cause and therefore caused no damages for which he could recover." Kennedy v. City of New York, No. 11-CV-1451, 2013 WL 3490351, at *4 (E.D.N.Y. July 10, 2013) (citing Townes v. City of New York, 176 F.3d 138, 149 (2d Cir. 1999)).

**B. The Malicious Prosecution Claim**

Defendants argue that Cross's malicious prosecution claim should be dismissed for three reasons: (1) there was no Fourth Amendment seizure, (2) probable cause existed to prosecute Cross, and (3) Cross has failed to allege actual malice on the part of Romano or Reilly. Mem. at

3–5. The Court agrees that there was probable cause to prosecute Cross and that actual malice cannot be imputed to Reilly or Romano. Therefore, Cross's malicious prosecution claim must be dismissed.

"To state a Section 1983 claim for malicious prosecution, the plaintiff must allege the four elements of malicious prosecution under New York state law and a 'sufficient post-arraignment liberty restraint to implicate the plaintiff's Fourth Amendment rights.'" Manbeck v. Micka, 640 F. Supp. 2d 351, 369 (S.D.N.Y. 2009) (quoting Rohman v. N.Y.C. Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000)). The Second Circuit has ruled that the deprivation of liberty must rise to the level of a seizure under the Fourth Amendment:

> The Fourth Amendment right implicated in a malicious prosecution action is the right to be free of unreasonable seizure of the person—i.e., the right to be free of unreasonable or unwarranted restraints on personal liberty. A plaintiff asserting a Fourth Amendment malicious prosecution claim under § 1983 must therefore show some deprivation of liberty consistent with the concept of "seizure."

Singer v. Fulton Cty. Sheriff, 63 F.3d 110, 116 (2d Cir. 1995). The elements of a malicious prosecution tort action under New York state law are "(1) the defendant either commenced or continued a criminal proceeding against [the plaintiff]; (2) that the proceeding terminated in [the plaintiff's] favor; (3) that there was no probable cause for the criminal proceeding; and (4) that the criminal proceeding was instituted with actual malice." Dawkins v. Williams, 511 F. Supp. 2d 248, 251 (N.D.N.Y. 2007) (Kahn, J.).

Under New York law, "even when probable cause is present at the time of arrest, evidence could later surface which would eliminate that probable cause." Cox v. County of Suffolk, 780 F. Supp. 103, 108 (E.D.N.Y. 1991). "In order for probable cause to dissipate, the

groundless nature of the charges must be made apparent by the discovery of some intervening fact." Lowth v. Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996) (citing Callan v. State, 73 N.Y.2d 731 (1988)); see also Kinzer v. Jackson, 316 F.3d 139, 143 (2d Cir. 2003) (finding that probable cause to prosecute did not exist where "the probable cause that existed at the time of his arrest had been nullified by information establishing [the plaintiff's] innocence").

As discussed above, in Burg, the Second Circuit made it clear that "that the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure." 591 F.3d at 98. However, the Second Circuit later stated in Swartz v. Insogna that "[w]e have consistently held that a post-arraignment defendant who is 'obligated to appear in court in connection with [criminal] charges whenever his attendance [i]s required' suffers a Fourth Amendment deprivation of liberty." 704 F.3d 105, 112 (2d Cir. 2013) (quoting Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997)). One district court in this circuit attempted to reconcile these two cases by clarifying that "while the issuance of a pre-arraignment, non-felony summons that merely requires a later court appearance does not constitute a Fourth Amendment seizure, the requirement that a plaintiff appear in court, post-arraignment, in connection with criminal proceedings, does constitute a Fourth Amendment seizure." MacPherson v. Town of Southampton, No. 07-CV-3497, 2013 WL 6058202, at *5 (E.D.N.Y. Nov. 13, 2013).

*1. The Seizure*

Cross alleges that after pleading not guilty to the two traffic violations for which he was issued the summonses, his "City Court Trial" was scheduled for July 11, 2014. Compl. ¶¶ 13–14. After rejecting the offer to dismiss the charges, Cross went to trial and won. Id. ¶¶ 14–16.

12

Although this is not completely clear from the Complaint, after pleading not guilty, Cross was presumably required to appear for trial in Albany City Court. Under Swartz, this course of events satisfies the requirement that malicious prosecution claims state a Fourth Amendment seizure. 704 F.3d at 112. The Court notes that even though Swartz speaks in terms of *criminal* charges and proceedings, Defendants fail to argue that the proceedings described by Cross should not be characterized as criminal proceedings. It is not obvious to the Court that the kinds of traffic violations at issue here are properly described as criminal charges, and it is far from clear that the adjudication of Cross's traffic tickets involved criminal proceedings. However, because Defendants do not raise this issue, the Court finds that the apparent requirement that Cross appear in court post-arraignment constitutes a seizure under the Fourth Amendment.

2. *Probable Cause to Continue the Prosecution*

Nevertheless, Cross's malicious prosecution claim fails because probable cause existed to carry out the prosecution. For the reasons discussed above, Romano had probable cause to issue the two traffic tickets. Accordingly, the question is whether "the groundless nature of the charges [against Cross] was made apparent by the discovery of some intervening fact." Lowth, 82 F.3d at 571. In his Response, Cross alleges that three days before trial, "Romano arrived at Yankee Doodle Taxi Co requesting and receiving a copy of the Plaintiff's taxi trip log-book—evidencing no violation." Resp. at 16.[1] Even if the log book contained entries clearly showing that Cross was in fact making a round trip from Rensselaer to Albany and back, this would not prove that the charges were "groundless." Lowth, 82 F.3d at 571. Perhaps Romano thought the log entries in

---

[1] "The Court may consider the factual allegations in plaintiff's Response to supplement those in his complaint because of the liberal standard afforded to the pleadings of pro se litigants." Ibok v. Sector, No. 05-CV-6584, 2006 WL 302336, at *1 n.1 (S.D.N.Y. Feb. 9, 2006).

question were fabricated after the fact. As noted above, an officer need not believe a suspect's version of events in order to have probable cause. See Krause, 887 F.2d at 372.

Moreover, the log book entry for the day in question, which is attached as an exhibit to Cross's Complaint, Compl. at 46, does not clearly show that Cross took the passengers on a round trip from Rensselaer to Albany and back. Cross's ninth trip of the day was from "Alb med" to "85 Aiken," a Rensselaer address. Id. This appears to be the last leg of the alleged round trip. However, the sixth trip was from "85 Aiken" to "Walmart," the seventh trip was from "1 Broadway" to "31 Partition," and the eighth trip was from "Walmart" to "85 Aiken." Id. Assuming that the persons being picked up and dropped off at "85 Aiken" are the same people, it appears from the log book that Cross picked them up, drove them to Walmart, and then took them back to 85 Aiken. However, it is not clear how these passengers got to Albany Medical Center, since that is never listed as a destination in the log book entry. Even if Romano had no reason to doubt the veracity of the log book he was provided, the Court finds that the entry does not show that the tickets issued to Cross were groundless, because it does not plainly establish that Cross actually made the alleged round trip. Therefore, Cross fails to allege facts sufficient to show that the probable cause that existed to issue the tickets was nullified by providing the log book entry to Romano.

3. *Actual Malice*

Cross also fails to allege facts showing actual malice on the part of either Reilly or Romano. Cross merely alleges that Romano was "incompetent [and] negligent [with an] outrageous incapacity to recognize and determine facts and evidence available to him." Compl. ¶ 76. This is far from the showing of "a wrong or improper motive" for pursuing the criminal

proceeding that is necessary to succeed on a malicious prosecution claim. Nardelli v. Stamberg, 44 N.Y.2d 500, 502–03 (1978).

Because Cross fails to allege facts showing a lack of probable cause for commencing and continuing the prosecution, and because Cross fails to allege facts sufficient to establish actual malice, Cross's malicious prosecution claim fails.[2]

### C. Municipal Liability

In order to establish liability of a municipality under § 1983, a plaintiff must plead and prove that the deprivation of his constitutional rights "was caused by a governmental custom, policy, or usage of the municipality." Jones v. Town of East Haven, 691 F.3d 72, 80 (2d Cir. 2012) (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978)). "The plaintiff must first prove the existence of a municipal policy or custom in order to show that the municipality took some action that caused his injuries beyond merely employing the misbehaving officer. Second, the plaintiff must establish a causal connection—an 'affirmative link'—between the policy and the deprivation of his constitutional rights." Vippolis v. Village of Haverstraw, 768 F.2d 40, 44 (2d Cir. 1985). A plaintiff must demonstrate that the municipality, through its own deliberate conduct, was the "moving force" behind the alleged injury. Roe v. City of Waterbury, 42 F.3d 31, 37 (2d Cir. 2008). A plaintiff asserting municipal liability under § 1983 is not required to "show that the municipality had an explicitly stated rule or regulation." Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). The existence of a municipal policy may be established by

---

[2] Because the Complaint fails to allege facts demonstrating a lack of probable cause or the existence of actual malice, and because these are two of the elements of malicious prosecution under New York law, Dawkins, 511 F. Supp. 2d at 251, the Complaint fails to state either a state or federal malicious prosecution claim.

15

demonstrating "a failure by policy makers to train or supervise subordinates." McLaurin v. New Rochelle Police Officers, 373 F. Supp. 2d 385, 400 (S.D.N.Y. 2005). "Although courts generally cannot infer the existence of a policy or custom from a few isolated incidents, the Supreme Court has not altogether foreclosed that possibility." Vasconcellos v. City of New York, No. 12-CV-8445, 2014 WL 4961441, at *13 (S.D.N.Y. Oct. 2, 2014) (citing Connick v. Thompson, 563 U.S. 51, 61–63 (2011)). A single incident may give rise to municipal liability where it reflects a failure to provide training in circumstances where "the unconstitutional consequences of failing to train [are] so patently obvious that a city should be liable under § 1983 without proof of a pre-existing pattern of violations." Connick, 563 U.S. at 64.

Defendants moved to dismiss Cross's § 1983 claim against the City of Albany on the grounds that Cross has merely alleged "only one isolated incident of misconduct (the improper issuance of a traffic ticket), rather than a pattern or widespread practice, and he likewise fails to allege that the misconduct was undertaken and/or known and ratified by a policymaking municipal employee." Mem. at 6. The Court agrees.

Cross alleges that Romano's behavior during the incident makes it "painfully apparent that [he] was never properly trained to understand the elements of the intent of the legislation." Compl. ¶¶ 114–15. This allegation is insufficient to establish liability under Monell, since the basis for the conclusion that Romano was poorly trained is a single incident of alleged misconduct, which typically cannot give rise to § 1983 liability against the City of Albany. Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991). Moreover, it is not obvious that unconstitutional consequences will flow from the City of Albany's alleged failure to train officers such as Romano in the niceties of the Albany City Code's taxicab regulations.

16

Cross also points to a letter he sent after the incident to Reilly and "Carolyn McLaughlin[,] City Council President," which recommended that the City of Albany adopt the language of a taxi ordinance implemented by the City of Troy, New York. Compl. ¶¶ 112–13. This ordinance would allegedly clarify Albany's taxicab regulations by mandating that "[o]utside taxi companies are not affected by the City Ordinance [relating to medallions and hack licenses] unless they pick up and deliver within the city limits." Id. ¶ 113. The Court fails to see how this letter, which was sent after the incident in question, establishes a causal connection between any municipal policy and the alleged violation of Cross's constitutional rights. Moreover, a letter received after the alleged violation of Cross's constitutional rights cannot show that some "policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." Jones, 691 F.3d at 81. To the extent that Cross is alleging that ambiguities in the language of Albany's taxicab regulations are leading to pervasive violations of non-medallioned taxi drivers' constitutional rights, the Court notes that Cross's Complaint contains no allegations showing a pattern of such violations. Accordingly, Cross's § 1983 claim against the City of Albany fails.

### D. Prosecutorial Immunity

Prosecutors are entitled to absolute immunity "when they function as advocates for the state in circumstances 'intimately associated with the judicial phase of the criminal process.'" Bernard v. County of Suffolk, 356 F.3d 495, 502 (2d Cir. 2004) (quoting Imbler v. Pachtman, 424 U.S. 409, 430–31 (1976)). Prosecutorial immunity covers "virtually all acts, regardless of motivation, associated with [the prosecutor's] function as an advocate." Hill v. City of New York, 45 F.3d 653, 661 (2d Cir. 1995) (alteration in original). However, prosecutors are not

immune for "acts of investigation or administration." Dory v. Ryan, 25 F.3d 81, 83 (2d Cir. 1994). Investigative or administrative activities are only entitled to qualified immunity. Taylor v. Kavanagh, 640 F.2d 450, 452 (2d Cir. 1981). In order to determine whether conduct is entitled to absolute immunity or only qualified immunity, a court must undertake "[a]n examination of the functional nature of the prosecutorial behavior." Id. "An official who asserts absolute immunity from § 1983 liability shoulders the burden of establishing the existence of immunity for the function in question." Hill, 45 F.3d at 660.

Defendants move to dismiss any claims against Reilly on the grounds that he is Corporation Counsel for the City of Albany and is therefore "absolutely immune from suit" for "his decision to prosecute [Cross's] traffic tickets and all conduct intimately related with that prosecution." Mem. at 7. The Court agrees that Reilly is entitled to absolute immunity in this case.

Cross complains of Reilly's "decision to prosecute taxidriver Cross notwithstanding that prior to trial the then acquired log revealed no violation of the local taxicab law." Compl. ¶ 120. Moreover, according to Cross, "Reilly had a duty in good faith not to subject taxidriver cross to the burden of trial." Id. ¶ 121. Cross also complains of Reilly's decision to appeal the dismissal of the traffic tickets. Id. ¶ 122. Cross is essentially challenging Reilly's decision to prosecute him for his alleged traffic violations. The determination of whether to initiate a prosecution is one of the "traditional functions of [Corporation Counsel]." Carbajal v. County of Nassau, 271 F. Supp. 2d 415, 421 (E.D.N.Y. 2003). Accordingly, Reilly is entitled to absolute immunity for the conduct described in the Complaint, and any claims against him are dismissed.

## V. CONCLUSION

Accordingly, it is hereby:

**ORDERED**, that Defendants' Motion to Dismiss (Dkt. No. 8) is **GRANTED in part**, as to the dismissal of Plaintiff's claims against the City of Albany and John Reilly, Plaintiff's false arrest claim against Michael Romano relating to the issuance of the tickets, and Plaintiff's malicious prosecution claim against Michael Romano, **and DENIED in part**, as to Plaintiff's false arrest claim against Michael Romano relating to the initiation of the stop; and it is further

**ORDERED**, that the Clerk of the Court terminate the City of Albany and John Reilly as Defendants in this action; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

DATED:   October 19, 2016
         Albany, New York

_____
Lawrence E. Kahn
U.S. District Judge